**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Robert Mehlschau, | No. CV-21-08122-PCT-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Costco Wholesale Corporation, et al., | |
| Defendants. | |

Before the Court is the Motion for Summary Judgment by Defendants Costco Wholesale Corporation and CEVA International, Inc. (collectively "Defendants"). (Doc. 22.) The Motion will be granted.[1]

**I.**

The following facts are not disputed. Plaintiff Robert Mehlschau ordered a reclining sofa from Costco, including delivery service to his house. CEVA is the company that performed the delivery. A two-person crew was charged with delivering the sofa. It weighed 272 pounds and it was packaged inside a box. The crew arrived at Mr. Mehlschau's house and, using a dolly, unloaded the sofa from the truck and positioned it near steps leading up to the front porch and doorway. After putting the dolly aside, each of the two crew members began lifting the sofa, still in the box, from opposing sides. The crew member furthest away from the door lost her grip, and the box slipped from her hands.

---

[1] Oral argument has been requested but it is not necessary to aid the Court in its determination of the issues presented. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

Now, Mr. Mehlschau, who was standing on his porch watching the crew do their job, rushed over to help. According to his account, he "positioned himself at the box end, still on the front porch, carefully positioning his shoulder to carry weight and his hands to get a good grip in order to help lift the couch." (Doc. 25 at 2.) But, as he was doing this, Mr. Mehlschau seriously injured his left biceps. He stepped aside while the delivery crew resumed their duties, lifting the sofa up the stairs, through the front door, and finally placing it in the desired room.

This is not the end of the story. Mr. Mehlschau's pain was serious enough that he visited the hospital for treatment. He also filed lawsuit against Defendants for negligence and breach of contract in Arizona Superior Court.[2] The case was removed to federal court. Discovery is closed and Mr. Mehlschau's claims are the subject of Defendants' Motion for Summary Judgment.

## II.

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted); *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted). That said, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550

---

[2] Plaintiff styles his first claim for relief as "personal injury." (*See* Doc. 1-2 at 3.) The Court construes this as a claim for negligence and will refer to it in this manner herein.

1  U.S. 372, 380 (2007).

2                                           **III.**

3                                            **A.**

4           The Complaint's first claim for relief is for negligence against both Costco and

5  CEVA. "'To establish a defendant's liability for a negligence claim, a plaintiff must prove:

6  (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of

7  that standard; (3) a causal connection between the breach and the resulting injury; and

8  (4) actual damages.'" *CVS Pharmacy, Inc. v. Bostwick ex rel.*, 494 P.3d 572, 578 (Ariz.

9  2021) (quoting *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827–28 (Ariz. 2018)).

10          Defendants argue that they did not owe a duty of care to Mr. Mehlschau because he

11  voluntarily inserted himself into the delivery process. Under Arizona law, which this Court

12  must follow, Defendants argue that they can only be liable for Plaintiff's injuries if they

13  acted with "gross negligence, willfulness or wantonness." *Western Truck Lines, Ltd. v. Du*

14  *Vaull*, 112 P.2d 589, 592 (Ariz. 1941); *see also Bond v. Cartwright Little League, Inc.*, 536

15  P.2d 697, 702 (Ariz. 1975) ("That where a mere volunteer—that is, one who has no interest

16  in the work—undertakes to assist the servants of another, he does so at his own risk."). It

17  is undisputed that the delivery crew did not ask Mr. Mehlschau for his assistance lifting the

18  sofa up the stairs. (Doc. 22-3 at 24:5–25:6.) And there is no evidence that he submitted

19  himself to the delivery crew's direction and control. (*Id.*) Instead, while observing the

20  delivery crew work, Mr. Mehlschau voluntarily attempted to assist them lift his sofa onto

21  his front porch. (*Id.* at 25:7–26:7.) When he injured himself, he stood aside and watched as

22  the delivery crew completed the job. (*Id.* at 28:3–29:12, 42:2–23.) The Court finds that, on

23  this record, no reasonable jury could conclude that Mr. Mehlschau was anything other than

24  a volunteer.

25          Defendants are subject to liability only if their conduct constitutes "gross

26  negligence, willfulness, or wantonness." *Western Truck Lines*, 112 P.2d at 592. "Gross

27  negligence is highly potent, and when it is present it fairly proclaims itself in no uncertain

28  terms. It is in the air, so to speak. It is flagrant and evinces a lawless and destructive spirit."

*Merritt v. Arizona*, 425 F. Supp. 3d 1201, 1231–32 (D. Ariz. 2019) (quotation omitted). A court may, at the summary judgment stage, resolve gross negligence in the defendant's favor, as a matter of law, "if the plaintiff fails to produce evidence that is more than slight and that does not border on conjecture such that a reasonable trier of fact could find gross negligence." *Armenta v. City of Casa Grande*, 71 P.3d 359, 365 (Ariz. Ct. App. 2003) (cleaned up). The Court agrees with Defendants that there is no evidence in the record that their conduct approached the standard for gross negligence under Arizona law. For example, Plaintiff does not point to any of the delivery crew's own actions that could be considered grossly negligent. (*See* Doc. 22-3 at 38:16–19; 39:19–41:21.) By his own admission, he inserted himself voluntarily based on his incorrect belief that "the helper could not help" and his misplaced "concern[] for their safety." (Doc. 1-2, ¶¶ 13–15; Doc. 22-3 at 24:5–25:16, 41:16–24.) To the extent Plaintiff means to imply that the delivery crew was grossly negligent in failing to stop him from attempting to lift the sofa, that implication fails under Arizona law. *See Bond*, 536 P.2d at 702 (holding that volunteers not subject to any direction or control assume the risk of their undertaking to serve others).

Mr. Mehlschau contends that Defendants owed him a duty of ordinary care per the Arizona Court of Appeals decision in *Bond v. Cartwright Little League, Inc.* In that case, the little league organization asked for parent volunteers to climb 100-foot metal poles and uninstall floodlights. 536 P.2d at 699–700. The plaintiff, Bond, did not respond to the initial call. Later, he was approached by the little league president and asked if he would volunteer and work "on the ground" rather than climb poles. *Id.* at 700. Bond agreed. On the day of the project and at the site, someone asked Bond to climb a pole. Again, he agreed. Bond did not make it to the top. He fell at about 40 feet and was injured. *Id.* The Court of Appeals held that the little league organization "owed him a higher standard of care" because the circumstances established an employment-like status between Bond and the little league organization. *Id.* at 701, 702–03 ("We believe that the relationship between Sgt. Bond and the Cartwright Little League, Inc. was that of a gratuitous employee rather than a mere

1  volunteer."). The court observed that

> [t]he two key elements for the determination of whether a gratuitous undertaking is part of the master-servant relationship are whether the actor has submitted himself to the directions and control of the one for whom the service is done and whether the primary purpose underlying the act was to serve another.

*Id* at 702.

Under the facts presented in *Bond*, the court concluded that the little league "set the time and place as well as the manner in which the lights were to be removed and had control over Bond's actions while he was working." *Id*. at 703. In this case, however, neither Costco nor the CEVA delivery crew exercised any control over Mr. Mehlschau such that he became a gratuitous employee. The crew did not ask for his assistance. (Doc. 22-3 at 24:5–25:6.) They did not direct or control his actions. (*Id.* at 24:5–26:7.) Nor was this an undertaking for another's benefit. On the contrary, he offered to assist on his own for the purpose of moving his new sofa into his house. (*Id.*)

Finally, Mr. Mehlschau argues that Defendants owed him a duty of ordinary care arising out of their contractual relationship. On these facts, he is mistaken. The purchase and delivery contract did not establish a duty of care to prevent personal injury like the example provided by the court in *Forbes v. Romo*, 601 P.2d 311 (Ariz. Ct. App. 1979). In that case, the court reasoned, "[a]ssuming arguendo that the contract between Sandy's and Romo created a duty on the part of Sandy's to act as a reasonable and prudent person under the circumstances in the cleaning of the sidewalk, the mere fact that an injury or accident occurred does not prove negligence." *Id*. at 314. There is no similar contract term here. (*See* Docs. 22-1 at 2; 22-2 at 2; 22-4 at 2; 22-5 at 2.)

\*          \*          \*

Summary judgment will be entered in Defendants' favor on Plaintiff's negligence claim.

## B.

The breach of contract claim is asserted against Costco. "It is well established that, in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages." *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). The Complaint alleges only that "Costco failed to properly provide for [the sofa's] delivery" and it "breached its agreement with Plaintiff." The Complaint further alleges that, "[a]s a result of Costco's breach of contract, Plaintiff was damaged." (Doc. 1-2, ¶¶ 26–28).

It is undisputed that Costco delivered the sofa to Mr. Mehlschau as promised in the purchase and delivery contract, yet Plaintiff continues to press this claim. The response opposing summary judgment reveals more about this curiosity. In it, Mr. Mehlschau argues a novel theory that blends torts and contracts. He claims that "Defendants breached their duty owed to the Plaintiff by not providing adequate personnel to help deliver the couch as promised in their contract." (Doc. 25 at 5.) Mr. Mehlschau further contends that Costco breached its contract by not exercising "care in preventing damage to the Plaintiff upon delivery of the couch." (*Id.*)

Defendants argue that the sofa was delivered as promised. They also argue that there is "no contract term that requires Defendants to exercise care in preventing injury to Plaintiff himself." (Doc. 27 at 5.) They steadfastly maintain that "Defendants' conduct did not cause harm to Plaintiff. That harm was the result of Plaintiff's own doing when he wrongfully interfered with Defendants' performance of their contractual obligations." (*Id.*)

Where the terms are plain and unambiguous, the interpretation of a contract is a matter of law for the court to decide. *Smith v. Melson, Inc.*, 659 P.2d 1264, 1266 (Ariz. 1983). "In interpreting a contract, [courts] examine the language to deduce the intention of the parties." *Apollo Educ. Group, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 480 P.3d 1225, 1228 (Ariz. 2021). There is no contract term that supports Mr. Mehlschau's theory that Costco owed him a duty to avoid personal injuries. (*See* Docs. 22-1 at 2; 22-2 at 2; 22-4 at 2; 22-5 at 2.) And, again, it is undisputed that the two-person delivery crew

ultimately transported the sofa up the front porch stairs, into the house, and positioned the sofa exactly where Mr. Mehlschau requested. (Doc. 22-3 at 28:3–29:12, 42:2–23.) As Defendants' point out, Mr. Mehlschau "signed a delivery receipt confirming the sofa was delivered in good condition pursuant to the agreement." (Doc. 22 at 4 (citing Doc. 22-3 at 31:5–35:13; 36:20–37:1; Doc. 22-5 at 2).) For these reasons, the Court finds that Plaintiff has failed to carry his burden. No genuine issues of material fact exist on the breach of contract claim. *See Vintage Speedsters of California v. Vintage Motorcar Ltd*., 1 CA-CV 21-0501, 2022 WL 2129074, at *2 (Ariz. Ct. App. June 14, 2022) ("The court should grant summary judgment only if it finds that no genuine issues of material fact exist, and that one party is entitled to judgment as a matter of law.").

## IV.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 22) is **granted**. The Clerk of Court is instructed to enter judgment in Defendants' favor and close this case.

Dated this 3rd day of October, 2022.

Michael T. Liburdi
United States District Judge